**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3582
_____

LANE C. HURLEY,
                    Appellant

v.

SUPERINTENDENT MERCER SCI; ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(D.C. Civil No. 3-13-cv-01502)
District Judge:  Honorable Robert D. Mariani

Argued:  October 9, 2018

Before:  AMBRO, CHAGARES, and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>.

(Filed: December 12, 2018)


Jeremy Gutman      **[ARGUED]**
40 Fulton Street, 23rd Floor
New York, NY 10038

        Counsel for Appellant

Courtney E. Hair      **[ARGUED]**
Michelle H. Sibert
Cumberland County Office of District Attorney
1 Courthouse Square
2nd Floor, Suite 202
Carlisle, PA 17013

        Counsel for Appellee

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Lane Hurley was convicted by a jury of multiple acts of sexual abuse against his then ten-year-old niece and he seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. The District Court denied his habeas petition, and for the reasons stated below, we will affirm.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Because Hurley contends there was insufficient evidence to convict him, we must view the evidence "in the light most favorable to the prosecution." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

In the summer of 1997, Hurley's sister, brother-in-law, niece, and nephew moved into his three-bedroom farmhouse in Cumberland County, Pennsylvania. Hurley's sister and brother-in-law worked outside of the house, often leaving him to watch his niece and nephew, Jessica and Zach.

The first time Hurley invited then ten-year-old Jessica into his bedroom, he showed her pornography on his computer. The encounters in his room escalated, and he would masturbate while showing her pornography. As the summer progressed, Hurley

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

began to enter Jessica's bedroom at night and molest her. At first, he would take off her clothes and touch her and himself. On subsequent nights, he would penetrate her with his finger, lick her, and tell her she was beautiful. By the end of the summer, he forced her to perform oral sex. She estimated that Hurley molested her about 75 times; it "happened quite frequently" throughout the summer. Appendix ("App.") 80, 62.

Jessica did not tell anyone about the abuse for years because Hurley had told her that, if she did, he would kill himself. She testified that she "love[s] [her] uncle" and wanted to "protect [her] mom." App. 57. Hurley moved out of the house in the fall of 1997 when he got married.

Jessica developed an eating disorder, and by 2000 she had gone from 115 pounds to 69 pounds. She was hospitalized at Hershey Medical Center for six weeks.

On May 17, 2001, Jessica, now in eighth grade, suffered a breakdown in school. The memories of the abuse "all of a sudden . . . were just there," and she was taken to the counselor's office in a hysterical state. App. 65. Jessica's mom picked her up from school and brought her to psychologist Dr. Lane-Loney, whom Jessica had been seeing for the eating disorder. Jessica told Dr. Lane-Loney about the abuse she endured during the summer of 1997. Dr. Lane-Loney called child protective services, and Hurley was arrested and charged.

After a jury convicted Hurley following a trial in the Court of Common Pleas of Cumberland County, he was granted a new trial on the grounds that his trial counsel had been ineffective. See Hurley v. Thompson, 2016 WL 10543972, at *4 (M.D. Pa. June 29, 2016). His second trial and pursuant convictions are the subject of this appeal. On re-

3

trial, Hurley moved to suppress Jessica's testimony on grounds that it was predicated solely on repressed memory. The theory of repressed memory provides that a person can fully repress and forget a traumatic memory until it is later recovered, usually by a therapist's attempt to elicit it. In support of his motion, he presented three experts who testified to the lack of scientific acceptance that memories can be repressed, forgotten, and then recovered. The trial court denied Hurley's motion.[1] But it permitted his expert, Dr. Labellarte, to testify before the jury about the unreliability of repressed memory, provided he did not opine as to whether Jessica's memory was repressed.

The jury convicted Hurley of involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, and corruption of the morals of a minor. 18 Pa. Cons. Stat. §§ 3123(a)(6), 3125(a)(7), 3126(a)(7), 6301(a)(1). His convictions were affirmed, and the Pennsylvania Supreme Court denied his appeal. Commonwealth v. Hurley, 965 A.2d 295 (Pa. Super. 2008) (table), appeal denied, 981 A.2d 218 (Pa. 2009). Hurley then commenced collateral proceedings by filing a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"), pursuant to 42 Pa. Cons. Stat. § 9541. The PCRA court denied his petition, and the Superior Court affirmed the denial. Commonwealth v. Hurley, 62 A.3d 450 (Pa. Super. 2012) (table). The Pennsylvania Supreme Court denied

---

[1] In his original habeas petition, Hurley argued the trial court's evidentiary ruling to admit Jessica's testimony deprived him of due process, but he has explicitly abandoned that argument. The issue of admissibility is therefore not before us, regardless of Hurley's seeming attempt to cloak his barred admissibility claim with language of sufficiency.

his Petition for Allowance of Appeal. <u>Commonwealth v. Hurley</u>, 67 A.3d 794 (Pa. 2013) (table).

Hurley then petitioned for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. The District Court denied the writ on the grounds that the jury assessed the credibility of the witnesses, and it was "bound to defer to the judgment of the jury after the defendant has received a fair trial." App. 18. The court expressed discomfort, however, with the theory of repressed memory, noting "the growing consensus within the science community that the methods of memory recovery are highly unreliable," and <u>sua sponte</u> certified the following issue for appeal:

> Whether a conviction in which the <u>only</u> direct evidence at trial originated from repressed memory testimony of the victim may be constitutionally sufficient, when a growing body of academic literature has criticized repressed memory recovery as prone to the creation of false memories.

App. 19.[2] Hurley timely appealed.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). Our review of the District Court's denial of habeas corpus is plenary because no evidentiary hearing was held. <u>Eley v. Erickson</u>, 712 F.3d 837, 845 (3d Cir. 2013). Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), our review is "limited to the record that was

---

[2] While Hurley raised other issues in his habeas petition, the District Court certified only this. Third Circuit Local Appellate Rules provide that "the court of appeals will not consider uncertified issues unless appellant first seeks, and the court of appeals grants, certification of additional issues." 3d Cir. L.A.R. 22.1(b) (2011). Hurley has not petitioned to certify additional issues; therefore our focus is exclusively on whether there was sufficient evidence for a rational juror to convict.

5

before the state court that adjudicated the prisoner's claim on the merits." Greene v. Fisher, 565 U.S. 34, 38 (2011). The Superior Court of Pennsylvania's affirmance on direct appeal was the last state court decision on the merits.

III.

AEDPA provides that a federal court cannot grant a writ of habeas corpus to a person in custody pursuant to a state court judgment with respect to any claim that the state court adjudicated on the merits with two exceptions: first, if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and second, the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The Supreme Court has underscored that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000). That is, the state court can get it wrong and yet still be reasonable; "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Stated differently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Eley, 712 F.3d at 846 (quoting Harrington, 562 U.S. at 102)). The Supreme Court has warned, "[i]f this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing

a complete bar on federal-court relitigation of claims already rejected in state court proceedings." Harrington, 562 U.S. at 102.

The clearly established federal law governing Hurley's sufficiency of the evidence challenge comes from Jackson v. Virginia: "[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. We have held that Pennsylvania's standard for reviewing sufficiency of the evidence — the standard the Superior Court applied here — "do[es] not contradict Jackson." Eley, 712 F.3d at 848.

The Superior Court's application of Jackson to Hurley's claim was not unreasonable because it carefully considered the elements of each crime of conviction, listed what facts were found to satisfy each element, and concluded that a rational jury could convict Hurley of each crime beyond a reasonable doubt.

The Superior Court chronicled Jessica's testimony of Hurley's abuse: showing ten-year-old Jessica pornography, masturbating in front of her, taking her clothes off and rubbing his penis on her, licking her, penetrating her with his fingers, and forcing her to perform oral sex. In addition to Jessica's own testimony, Jessica's mother testified that she had seen Hurley go into Jessica's bedroom at night; she had thought his nighttime visits were for the purpose of "say[ing] prayers," something she had encouraged. App. 204. Jessica's brother also testified that he had seen Hurley enter her bedroom at night. The Superior Court noted that the only testimony contradicting Jessica's was that of

7

defense expert Dr. Labellarte, and his testimony was limited to his opinion that repressed memory is not scientifically acceptable.

The Superior Court found that the record supported the conclusion that Jessica's memories were not repressed and revived, but instead that Dr. Lane-Loney asked open-ended questions and Jessica "voluntarily disclosed that Hurley had molested her." App. 209. The Superior Court held:

> We see no grounds for disturbing the jury's findings of fact because the victim's eyewitness testimony was corroborated by the testimony of her mother and brother, and not directly contradicted by eyewitness testimony, but only indirectly by Dr. Labellarte's expert testimony. The jury was free to accept any or all of the testimony presented. Thus the trial court did not abuse its discretion in finding that the verdict was not shocking to one's sense of justice.

App. 215.

Hurley argues that the Superior Court's determination that Jessica's memories were not repressed is an unreasonable determination of the facts, and thus is not entitled to deference under AEDPA. See 28 U.S.C. § 2254(d)(2). Specifically, Hurley takes issue with the Superior Court's characterization that Jessica had "bottled-up" her memories and "chose" not to disclose the abuse for years. Hurley Br. 32–33. Hurley focuses on two of Jessica's statements, arguing they prove she had no memory of the abuse until May 2001: first, her statement that "this cloud had been lifted and suddenly everything was there, like it was all just there," Hurley Br. 33; App. 68, and second, her statement that her memories had been "under a blanket, and the blanket was lifted." Hurley Br. 33; App. 71. Hurley contends that Jessica had no memory of the abuse between 1997 and May 2001, and therefore his convictions are based on insufficient evidence.

8

Hurley's argument is foreclosed, however, by the double layer of deference that AEDPA demands. On the first layer of deference, we ask if a rational jury could have convicted Hurley of sexually abusing Jessica. See Eley, 712 F.3d at 853. The jury was presented with the victim's graphic testimony that her uncle had repeatedly sexually abused her throughout the summer of 1997. She testified that she failed to tell anyone of the abuse until years later because she did not want to hurt her mother or her uncle. Instead, she coped with the abuse by developing an eating disorder so severe that she lost nearly half of her body weight and was hospitalized for six weeks. After a breakdown in school, she divulged the abuse to her psychologist. There is no evidence that techniques such as hypnosis were used to draw out the memories. A rational jury could have believed that Jessica chose to keep the abuse to herself, not because she had repressed it so deeply that she had forgotten it occurred and then subsequently testified based on faulty memory, but because she wanted to avoid hurting her family.

Adding the second layer of deference, we ask if it was objectively unreasonable for the Superior Court to conclude that a rational jury could have convicted Hurley of sexual abuse. We hold it was not. Juries are granted "broad discretion in deciding what inferences to draw from the evidence presented at trial," and courts of appeals should not "unduly impinge on the jury's role as factfinder." See Coleman v. Johnson, 566 U.S. 650, 655 (2012). Furthermore, this broad grant of discretion is a general rule, and "[t]he more general the rule, the more leeway courts have" in determining whether clearly established federal law has been unreasonably applied. Yarborough, 541 U.S. at 664. Even if we disagreed with the jury's guilty verdict, we could only grant habeas relief if the Superior

9

Court's decision to uphold the verdict was objectively unreasonable. We hold it was not objectively unreasonable for the Superior Court to conclude that a rational jury could have convicted Hurley.

IV.

For the foregoing reasons, we will affirm the District Court's denial of habeas corpus relief.